UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERRY RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV836 CDP |
| ) | |
| BELLEFONTAINE ) | |
| HABILITATION CENTER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Jerry Russell has been employed as a security officer by defendant Bellefontaine Habilitation Center since the mid-1990s. He was promoted to his current position, Security Officer III, in June of 1999, and is currently the highest-ranking officer and the department head. In February of 2008, he received a notice of unacceptable conduct, after his supervisors determined he had violated several of defendant's policies by failing to immediately remove an unauthorized person from defendant's grounds and by chasing an employee through the grounds in his security vehicle. Russell did not receive a demotion or a reduction of pay as a result of this notice, and he was not suspended for any amount of time.

Believing that he had been unfairly disciplined because of his race and in retaliation for his relationship with a co-worker, Russell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in

March of 2008. After receiving a right-to-sue letter from the EEOC, plaintiff, acting *pro se*, filed this lawsuit. He alleges that defendant violated Title VII of the Civil Rights Act of 1964 and Missouri law by discriminating against him because of his race and by retaliating against him. Defendant now moves for summary judgment on all of Russell's claims. Because I determine that Russell fails to present a prima-facie case of discrimination or retaliation, I will grant defendant's motion.

## Background and Undisputed Facts

Jerry Russell was hired by defendant Bellefontaine Habilitation Center ("BHC") as a security officer in the mid-1990s. He was promoted to Security Officer III in 1999 and has held that position since that time. He is currently the highest-ranking officer and the department head at BHC. On the night of February 14, 2008, Russell was called to a home on the property. An employee's boyfriend, who was not employed by defendant and was not authorized to be on defendant's grounds, was fighting with the employee over possession of their car. Russell intervened in the dispute and instructed the employee to give her boyfriend the car keys. Instead of giving her boyfriend the keys, the employee ran away, got in her car, and drove off defendant's grounds. Russell pursued her in his security vehicle and tried to stop her at a security station. Police officers arrived a few minutes later, and the boyfriend was asked to leave.

Russell's supervisors later reviewed his behavior on that night, determining that he had violated defendant's policies (1) by failing to immediately escort an unauthorized person from defendant's grounds, as he was required to do; and (2) by creating an unsafe environment because he had chased the employee through defendant's grounds in his security vehicle. As a result of his violations, a notice of unacceptable conduct was placed in Russell's personnel file. Russell's supervisors did not demote him, reduce his pay, or suspend him, however.

Russell filed this complaint in June of 2008, alleging defendants unfairly disciplined him because of his race and in retaliation for his relationship with a co-worker. Discovery is now complete, and defendant moves for summary judgment on all of Russell's claims, arguing that it is entitled to immunity from suit and that Russell fails to present prima-facie cases of discrimination and retaliation. In his response to defendant's motion, Russell raises several new allegations of discrimination and retaliation that he did not raise in his charge of discrimination or in his complaint. First, he claims that, as a result of his notice of unacceptable conduct, he (1) has been tested for drugs while a similarly situated Caucasian officer was not tested; and (2) was denied a promotion that a white officer received instead. Additionally, he contends that he was demoted from the position of switchboard supervisor in June of 2008 after he had complained about his co-workers using racial epithets in April of 2008. Finally, he claims that he

was docked a day's pay because he attended a court hearing in this case in June of 2009.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v Carrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material facts exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue of material fact. *Anderson*, 477 U.S. at 249.

### I. Immunity From Suit

Defendant first claims it is immune from suit under the Eleventh Amendment, because BHC is a state facility administered by the State of Missouri Division of Developmental Disabilities. Although the Eleventh Amendment

provides states and their entities with immunity from suit in general, *see* U.S. Const. amend XI, Congress validly abrogated that immunity "for claims of disparate impact on the basis of gender and race" when it enacted Title VII. *See* Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.*; *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Okruhlik v. University of Ark.*, 255 F.3d 615 (8th Cir. 2001). Here, even if Russell should have named the state of Missouri as the defendant instead of BHC, defendant's claim of immunity still fails. Russell brings claims under Title VII that defendant treated him differently because of his race and in retaliation for his actions, so defendant is not entitled to immunity from his suit. *See, e.g., Okruhlik*, 215 F.3d at 615.

## II. Racial Discrimination

Defendant next claims it is entitled to summary judgment on Russell's racial-discrimination claim[1], contending that Russell fails to present a prima-facie case. I agree.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an action based on a Title VII violation, a plaintiff

---

[1]Plaintiff's claims of racial discrimination and retaliation under the Missouri Human Rights Act, MO. REV. STAT. § 213.010 *et seq.* are subject to the same analysis as his claims under Title VII. *See, e.g.,Weger v. City of Ladue*, 500 F.3d 710, 717 n.4 (8th Cir. 2007).

survives a defendant's motion for summary judgment either (1) by presenting admissible evidence directly indicating unlawful discrimination, or (2) by creating an inference of unlawful discrimination under the *McDonnell Douglas* burden-shifting framework. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 863-64 (8th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Direct evidence of unlawful discrimination includes evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* at 863.

When, as here, a plaintiff does not produce direct evidence of discrimination, he can establish a prima-facie case of discrimination by producing evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated, Caucasian employees were treated differently. *E.g.*, *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004). If Russell satisfies that burden, defendant must respond with evidence that it had a legitimate, non-discriminatory reason for its adverse employment action. *Id.* If defendant produces such evidence, the burden shifts back to Russell to show that the defendant's articulated reason was a pretext for discrimination. *Id.*

For the purposes of its motion, defendant concedes that Russell is a member of a protected class, and that he was meeting defendant's legitimate job expectations. Defendant contends, however, that there is insufficient evidence that Russell suffered an adverse employment action, or that similarly situated Caucasian employees were treated differently. Accordingly, to survive defendant's motion, Russell must present sufficient evidence of both of these elements.

Within the Eighth Circuit, an adverse employment action is any action by an employer that produces a "material employment disadvantage." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999). "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard." *Id.*; *see also Meyers v. Nebraska Health & Human Servs.*, 324 F.3d 655, 660 (8th Cir. 2003) (sufficient evidence of adverse employment action when employer reassigned plaintiff to a position with "a considerable downward shift in skill level required to perform her new job responsibilities"). However, minor changes in duties or working conditions causing no materially significant disadvantage do not qualify as adverse employment actions. *Kerns*, 178 F.3d at 1016-17; *see also Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (reassigning employee to position involving "fewer secretarial duties" but more responsibilities for

monitoring the door and fax did not qualify as an adverse employment action, because it was no "more disruptive than a mere inconvenience or an alteration of job responsibilities").

Here, Russell alleged in his charge of discrimination and complaint that defendant disciplined him unfairly by issuing him a racially motivated notice of unacceptable conduct. Russell also claims that, as a result of the notice of unacceptable conduct, he was (1) subjected to several drug tests when another white officer was not; and (2) denied a promotion that a white officer received instead[2]. Defendant denies that the notice of unacceptable conduct was a material employment disadvantage, because it did not result in a change in Russell's job title as Security Officer III or his benefits. Defendant also asserts there is no evidence to support Russell's other claims.

I conclude that I need not decide whether these actions were adverse, because even if they were, Russell has failed to adduce sufficient evidence that other, similarly situated white employees were treated differently. To satisfy the fourth element of a prima-facie case of discrimination, Russell must produce evidence that he and other employees were "involved in or accused of the same or similar conduct and are disciplined in different ways." *Wimbley v. Cashion*, 588

---

[2]Although Russell raises both of these claims for the first time in his response to defendant's motion for summary judgment, I will consider them on the merits.

F.3d 959, 962 (8th Cir. 2009) (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005)). At the prima-facie stage, the test to determine whether a fellow employee is similarly situated is "not onerous," and a district court "must not conflate the prima-facie case with the ultimate issue of discrimination." *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) and *Johnson v. Arkansas State Police*, 10 F.3d 547, 551 (8th Cir. 1993)). The Eighth Circuit has previously held that employees are similarly situated when they violated the same company policy or engaged in similar, unprofessional behavior. *E.g.*, *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (plaintiff and other employee similarly situated when they both "were involved in similar pepper-spray conduct but were disciplined in different ways."); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (employees similarly situated when "they both violated the same bank policy by processing transactions on their own accounts"); *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857-58 (8th Cir. 2004) (employees similarly situated when they engaged in similar inappropriate "horseplay").

In his opposition to defendant's motion, Russell first claims that a similarly situated Caucasian security officer, John Sparks, was treated differently because he was not given a drug test after he had an accident in a state vehicle, while plaintiff was given five drug tests. However, Russell does not support this claim

with any evidence specifying whether these drug tests were given after he received his notice of unacceptable conduct, or whether he is just saying that he has been tested for drugs five times during his entire employment. Defendant submits evidence that Russell underwent two random drug tests in 2006, which is two years before he received the notice of unacceptable conduct. In the absence of any evidence to support Russell's recently-raised contentions, I cannot conclude that defendant required Russell to take drug tests as a result of his discipline.

Even if there were evidence to support that claim, however, there is no evidence that Russell is similarly situated to Sparks. In support of his claim, Russell submits a security report written by Sparks in which Sparks writes that he "scraped the passenger door" of his security vehicle while pulling out of a parking spot. By contrast, the evidence reveals that Russell was disciplined for "Willfully violating the lawful regulations or policies of [defendant] by failing to fully comply with DMH and BHC policies and procedures despite your having been made aware of those policies and procedures." In particular, Russell (1) failed to contact a local police department and immediately escort the unauthorized individual off of BHC grounds after discovering the individual; and (2) created a dangerous environment by unnecessarily chasing a fellow employee through BHC grounds, causing a risk for injury or death to BHC clients and staff.

Although Russell's burden at the prima-facie stage is "not onerous," *see Wimbley*, 588 F.3d at 962, I conclude Russell has presented no evidence that he and Sparks were involved in similar conduct, or that they violated the same policy. *Compare id.*; *Rodgers*, 417 F.3d at 852. Russell was found to have willfully disobeyed defendant's policies, while Sparks accidentally scraped the passenger side of his state vehicle. Additionally, there exists no evidence that Sparks created an unsafe environment with this action. Thus, even if the undisputed evidence showed that Russell was required to submit to more drug tests after he was disciplined than Sparks, Russell's claim still fails as a matter of law because there is no evidence that he was similarly situated to Sparks. *See Wimbley*, 588 F.3d at 962.

Finally, Russell claims for the first time in his response that he was unable to apply for a safety coordinator position because of the discipline he received, and that a Caucasian officer received a Safety Coordinator position instead. However, Russell fails to submit any evidence in support of this claim. A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading," but must produce evidence setting "out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Because Russell fails to support this claim with any evidence, it fails. *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.").

Russell's failure to produce evidence that a similarly situated Caucasian employee was treated differently is fatal to his claim, so I need not consider whether defendant articulates a legitimate, non-discriminatory reason for the discipline. Accordingly, summary judgment must issue to defendant on Russell's racial-discrimination claim.

### III. Retaliation

Russell next claims defendant retaliated against him by (1) unfairly disciplining him because of his relationship with a co-worker; (2) demoting him from switchboard operator after he complained that his co-workers were using racial epithets; and (3) docking him a day's pay and reducing his pay after he attended a hearing for this case. I conclude that Russell has failed to produce sufficient evidence from which a finder of fact could find in his favor on the first claim, and that he is barred from bringing his other claims because he failed to make those allegations in his charge of discrimination.

As is mentioned above, Russell claims he received the notice of unacceptable conduct in retaliation for his relationship with a co-worker. Title VII prohibits employers from taking adverse actions against employees in retaliation for their reports of discrimination. 42 U.S.C. § 2000e-3(a); *see also Haas v. Kelly*

*Servs., Inc.*, 409 F.3d 1030, 1036 (8th Cir. 2005) ("A claim for retaliation is not based upon . . . discrimination, but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination."). As with his racial-discrimination claim, the *McDonnell Douglas* burden-shifting framework applies because Russell presents no direct evidence to support his retaliation claim. *See Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980). Under this framework, Russell must first produce sufficient evidence that (1) he engaged in a protected activity; (2) a reasonable person would have found the challenged action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir. 2007). "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, . . . but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (citations omitted).

If Russell satisfies that burden and makes a prima-facie case, defendant must respond with a legitimate, non-discriminatory reason for its retaliatory action. *Id.* The burden then shifts back to Russell to show that the proffered reason is a pretext for retaliation. *Id.* A plaintiff satisfies that burden if he provides "sufficient evidence of retaliation to create a genuine issue for trial about

whether the employer acted based on an intent to retaliate rather than a good faith belief that the employee violated a workplace rule." *McCollough v. University of Ark. for Med. Scis.*, 559 F.3d 855, 864 (8th Cir. 2009).

Here, even if a fact finder could determine that Russell's co-worker retaliated against him by exaggerating the facts of the February 2008 incident because of his relationship with his co-worker's secretary, this would be insufficient to support a retaliation claim. To begin with, Russell's relationship with his co-worker's secretary is not a protected activity for Title VII purposes. *See* 42 U.S.C. § 2000e-3(a) (prohibiting employers from discriminating against any employee because he opposed an unlawful employment practice, or because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); *see also Sutherland v. Missouri Dep't of Corrs.*, 580 F.3d 748, 752 (8th Cir. 2009) ("The filing of incident reports (and grievances), Charges of Discrimination, and this lawsuit are protected activity."). In addition, the co-worker's allegedly exaggerated report occurred before plaintiff engaged in any protected activity. Specifically, Russell filed a harassment grievance against his co-worker in March of 2008 and filed this lawsuit in June of 2008. Because both of these activities occurred after the February 2008 report by Russell's co-worker, Russell fails to show any causal connection between his protected activities and the report. *See O'Brien v.*

*Department of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) ("We first note that [the supervisor's] conduct at the October 9, 2003 meeting preceded Appellants' EEOC complaints that led to this case, and, therefore, cannot constitute retaliation for those complaints.").

Finally, Russell claims – for the first time in his response – that (1) he was demoted from his switchboard supervisor position in June of 2008 after he complained the previous April that co-workers were using racially offensive terms around him; and (2) that defendant marked him absent without leave and docked his pay after he attended a hearing for this case in June of 2009. Even if these claims ultimately had merit, however, Russell cannot raise them for the first time now.

Title VII establishes an administrative procedure that a complaining employee must follow before filing a lawsuit in a federal court. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). To exhaust administrative remedies, a plaintiff must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge, and (2) receive notice of the right to sue. 42 U.S.C. § 2000e-5(b), (c), (e). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged

party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* at 223 (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985)). Accordingly, a plaintiff may not raise new allegations in his complaint that are "separate and distinct" from the claims raised in his charge of discrimination with the EEOC. *See id.* at 222-23 (plaintiff barred from alleging for the first time in her complaint that she suffered racial discrimination while employed by defendant, because she had only alleged in her charge of discrimination that she was not promoted in retaliation for a EEOC charge she had filed previously); *see also Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004) (because plaintiff's EEOC charge only alleged a failure to promote in 1997 as retaliation, he could not raise a 1995 failure-to-promote claim in his lawsuit).

Here, Russell did check the box for retaliation in his EEOC charge, but he only alleged that a co-worker retaliated against him by exaggerating the facts forming the basis of the notice of unacceptable conduct. Russell did not make any allegation, either in his EEOC charge or in his complaint, that he was demoted from his switchboard supervisor position in retaliation for complaining about co-workers using racial epithets. Finally, Russell does not claim that these two acts are "reasonably related," and I conclude that they are not. Russell's charge of discrimination relates to the discipline he received arising from his behavior in

February of 2008, but his allegations of a demotion in June of 2008 relate to his complaints of racially offensive language in April of 2008. Because he failed to bring this allegation before the EEOC when he filed his charge of discrimination, Russell may not bring it for the first time in his response to defendant's motion. *See Watson*, 365 F.3d at 614.

Finally, even if Russell had timely brought his claim that he was marked absent without pay in June of 2009 after he attended a hearing before me, he does not submit evidence in supporting it. Indeed, the only evidence before me reveals that plaintiff used annual leave time to be absent from work on the day of the hearing, which defendant approved. Accordingly, this claim – even if timely filed – fails as a matter of law. *See* Fed. R. Civ. P. 56(e).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#34] is granted, and plaintiff's complaint is dismissed. A separate Judgment will be entered this same day in accordance with this Memorandum and Opinion.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2010.